19-769-(L)
*Ekukpe v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17ᵗʰ day of August, two thousand twenty.

PRESENT:

GUIDO CALABRESI,

RICHARD C. WESLEY,

RICHARD J. SULLIVAN,

*Circuit Judges.*

_____

David Ekukpe,

*Plaintiff-Appellee,*

v.                                                    No. 19-769-cv
                                                      No. 19-770-cv

PO Juan Santiago, SGT John Ferrara,

*Defendants-Cross-Claimants-Appellants,*

v.

City of New York,

*Defendant-Cross-Defendant-Appellee,*

PO Osvaldo Hernandez,

*Defendant.*

_____

**FOR PLAINTIFF-APPELLEE EKUKPE:**  JOHN KNUSDEN (Edward Sivin, *on the brief*), Sivin & Miller, LLP, New York, NY.

**FOR DEFENDANT-CROSS-CLAIMANT-APPELLANT SANTIAGO:**  MITCHELL GARBER, Worth, Longworth & London, LLP, New York, NY.

**FOR DEFENDANT-CROSS-CLAIMANT-APPELLANT FERRARA:**  STEPHEN P. YOUNGER, Patterson Belknap Webb & Tyler LLP, New York, NY (Benjamin H. Weissman, Patterson Belknap Webb & Tyler LLP, New York, NY, Andrew C. Quinn, Anthony J. Difiore, The Quinn Law Firm, White Plains, NY, *on the brief*).

**FOR DEFENDANT-CROSS-DEFENDANT-APPELLE NEW YORK CITY:**  DANIEL MATZA-BROWN (Richard Dearing, Devin Slack, *on the brief*), *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Analisa Torres, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendants-Appellants – law enforcement officers with the New York City Police Department ("NYPD") – appeal from judgments entered by the United States District Court for the Southern District of New York (Torres, *J.*) after a jury trial.  We assume the parties' familiarity with the underlying facts, the procedural history, and the arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

On July 17, 2014, NYPD Officer Juan Santiago and NYPD Sergeant John Ferrara (together, "Defendants" or "officers") arrested Plaintiff-Appellee David Ekukpe in front

of his residence and charged him with disorderly conduct, harassment, obstruction of governmental administration, and resisting arrest. After obtaining video footage of the incident, prosecutors subsequently dismissed all charges, prompting Ekukpe to commence suit against the City of New York (the "City"), Santiago, Ferrara, and another NYPD officer under 42 U.S.C. § 1983 for excessive force, false arrest, malicious prosecution, denial of the right to a fair trial, failure to intervene, and First Amendment violations, as well as for malicious prosecution in violation of New York state law.

Prior to trial, Defendants asserted cross-claims against the City for indemnification, which the City thereafter moved to dismiss pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted the City's motion in part and denied it in part, concluding that the City could decide whether to indemnify Defendants after the conclusion of trial, at which time the court would address, if necessary, whether Defendants were entitled to indemnification as a matter of law.

After a five-day trial, the jury found both Ferrara and Santiago liable for false arrest, malicious prosecution, denial of the right to a fair trial, and failure to intervene; the jury also found Ferrara liable for the use of excessive force. Citing New York General Municipal Law Section 50-k, the City declined to indemnify Defendants, spurring Defendants to move for a determination that they were entitled to indemnification as a matter of law. In the alternative, Defendants moved for the district court to hold a hearing on the issue of indemnification. The district court denied Defendants' motions, finding that the City's decision was supported by an adequate factual basis and that an

3

evidentiary hearing was not required to further develop the record. The district court also denied Defendants' motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure and for judgment as a matter of law under Rule 50, except as to Ferrara's motion for judgment as a matter of law on his failure to intervene claim, which it granted in light of the jury's finding that Ferrara had directly participated in the constitutional violations.

On appeal, Defendants argue that the district court erred in denying (1) both Defendants' motions for judgment as a matter of law as to the false arrest and denial of a fair trial claims; (2) Santiago's motion for judgment as a matter of law as to Ekukpe's failure to intervene claim; and (3) Ferrara's motion for judgment as a matter of law on the malicious prosecution claim. Both Defendants also argue that the district court abused its discretion in denying their motions for a new trial based on allegedly misleading statements made by Ekukpe's counsel during summation. Finally, they contend that the City acted arbitrarily and capriciously in refusing to indemnify them, and that the district court erred in refusing to hold an evidentiary hearing on that matter.

"Judgment as a matter of law may not properly be granted [to a defendant] under Rule 50 unless the evidence, viewed in the light most favorable to [the plaintiff], is insufficient to permit a reasonable juror to find in [the plaintiff's] favor." *Galdieri–Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998). The Court reviews the district court's denial of a motion for judgment as a matter of law *de novo*. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). The Court reviews the district court's

4

denial of a motion for new trial, *Bracey v. Bd. of Educ.*, 368 F.3d 108, 113 (2d Cir. 2004), and its decision not to hold an evidentiary hearing for abuse of discretion, *United States v. Walters*, 910 F.3d 11, 22 (2d Cir. 2018).

**A. The District Court Did Not Err in Denying Defendant's Motion for Judgment as a Matter of Law on Ekukpe's False Arrest Claims.**

Santiago and Ferrara argue that the district court erred in denying their motions for judgment as a matter of law on the false arrest claim because they had probable cause to arrest Ekukpe for disorderly conduct and/or obstruction of governmental administration. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* (internal quotation marks omitted).

A person is guilty of disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof[,] . . . he congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law § 240.20(6). To be liable, it must be shown that "the individual (1) congregated with other persons in a public place; (2) was given a lawful order of the police to disperse; (3) refused to comply with that order; and (4) acted with intent to cause or recklessly created a risk of public inconvenience, annoyance or alarm." *Kass v. City of New York*, 864 F.3d 200, 211 (2d Cir. 2017). A person

5

is liable for obstruction of governmental administration when "he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act." N.Y. Penal Law § 195.05.

We agree with the district court that the evidence introduced at trial, viewed in the light most favorable to Ekukpe, "could reasonably support the jury's conclusion that [the officers] did not have probable cause to arrest [Ekukpe] for disorderly conduct." *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001). As the district court noted, Ekukpe testified that in "response to the officers' order to leave, he asked 'why [he and his friends] had to leave', but did not raise his voice, curse, or do anything outside of 'normal conversation,'" and "[t]his testimony is supported by the surveillance video." S. App'x 13 (quoting 6/18/2018 Tr. at 46:24–47:16). And as the district court further noted, the jury was free to reject Defendants' self-serving testimony that Ekukpe yelled profanity at them. *See Kerman v. City of New York*, 374 F.3d 96, 123 (2d Cir. 2004). Thus, when viewing the evidence in the light most favorable to Ekukpe, as we must, we cannot say that there was "overwhelming . . . evidence demonstrating the existence of probable cause" such that the jury could not legally conclude otherwise. *Provost*, 262 F.3d at 157 (internal quotation marks omitted).

As for Ferrara's argument that there was probable cause to arrest Ekukpe for obstruction of governmental administration, we agree with Ekukpe that Ferrara waived

this argument by failing to raise it before the district court. In his motion for judgment as a matter of law, Ferrara argued only that there was sufficient evidence that he had *arguable* probable cause to arrest Ekukpe on this ground. *See* App'x 928–29. But even on the merits, Ferrara's argument fails. Taking the evidence in the light most favorable to Ekukpe, a reasonable jury could have found that he did not "physically" interfere with the officers' investigation. Again, Ekukpe testified that he simply asked why he and his companions had to leave, and the jury was not required to credit the officers' self-serving testimony to the contrary. Moreover, while Ferrara insists that Ekukpe's failure to comply with a lawful order is alone sufficient to support a finding that he interfered with the investigation, the law is clear that the interference must "at least in part be 'physical' and cannot consist solely of verbal statements." *Kass*, 864 F.3d at 209 (citing *People v. Case*, 42 N.Y.2d 98, 101–02 (1977)). Although the jury was properly instructed that Defendants "claim [was] that they had probable cause to arrest plaintiff for obstructing governmental administration . . . because plaintiff flailed his arms, kicked his legs, and twisted his body while handcuffs were being applied," App'x 710–11, the evidence at trial did not compel a finding that Defendants' version of events was true. On these facts, the jury was simply not compelled to find that Defendants had probable cause to arrest Ekukpe for obstruction of governmental administration.

In the alternative, Santiago and Ferrara contend they are entitled to qualified immunity because they had at least "arguable probable cause" to arrest Ekukpe. Arguable probable cause exists when "it was objectively reasonable for the officer to

7

believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met." *Kass*, 864 F.3d at 206. The inquiry is "whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could* have determined that the challenged action was lawful." *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016). Thus, on review, a defendant is entitled qualified immunity as matter of law "if the evidence, viewed in the light most favorable to [the plaintiff], established that it was objectively reasonable for [the defendant] to believe he was justified in making the arrest." *Provost*, 262 F.3d at 160.

Santiago's and Ferrara's arguments on this point largely parrot their arguments regarding probable cause. But in making these arguments, Defendants again ignore the requirement that the evidence, including all disputed facts, must be viewed in the light most favorable to Ekukpe. When viewed in that light, the evidence introduced at trial amply supports the jury's verdict and does not compel a conclusion that it was objectively reasonable for the officers to believe that probable cause existed.

**B. The District Court Did Not Err in Denying Defendants' Motion for Judgment as a Matter of Law on Ekukpe's Fair Trial Claims.**

To prevail on a claim for the denial of the right to a fair trial, a plaintiff must prove that an "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016).

8

Santiago argues that he is entitled to judgment as a matter of law because there was "never any chance that the allegedly false narrative contained in [the] arrest paperwork and criminal court complaint could influence a jury's decision," since such evidence would not have been admissible at trial. Santiago Br. 23. But while the documents themselves may not have been admissible had Ekukpe's case gone to trial, the false information contained in those documents surely would have been admissible and material had it been elicited as testimony from the officers who wrote and/or approved the reports. As we noted in *Ricciuti v. New York City Transit Authority*, "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial" – even if a trial never occurs. 124 F.3d 123, 130 (2d Cir. 1997). The "influence" prong does not turn on whether the fabricated evidence is in fact *used* during a trial; it focuses rather on whether the fabricated evidence, if introduced during trial, could be expected to influence the jury's decision-making process. This inquiry is based in concerns of "due process of the law and fundamental justice." *Id.*; *see also id.* ("[L]ike a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable 'corruption of the truth-seeking function of the trial process.'" (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976)). Clearly, Santiago's false statements about Ekukpe being the aggressor and the officers not using force would have been relevant to the jury's determination of credibility and liability had Ekukpe's criminal case gone to trial.

9

For his part, Ferrara argues that he did not deprive Ekukpe of a fair trial because there was no evidence that he fabricated any evidence, and that the only "inaccurate" information in the arrest documentation – that no force was used – would not have influenced a jury because it was unrelated to the offenses with which Ekukpe was charged. Ferrara Br. 28–29. But even though Ferrara did not directly draft the fabricated report, the jury was entitled to conclude that he acted in collaboration with Santiago to deprive Ekukpe of his right to a fair trial. Indeed, there was ample evidence from which the jury could conclude that Ferrara participated in the initial assault, submitted false records internally to the NYPD, and then signed off on Santiago's false arrest report, knowing that the District Attorney's Office uses such reports as the basis for charges. *See Provost*, 262 F.3d at 155. And while Ferrara attempts to portray the fabrication as containing only a minor error, the jury was certainly free to conclude otherwise, since the arrest paperwork – viewed in the light most favorable to Ekukpe – falsely described Ekukpe as the aggressor and indicated that no force was in fact used by the officers. Those false statements, if elicited in testimony at trial, would surely have influenced the jury in its decision making. Accordingly, the district court did not err in declining to dismiss the fair trial claims.

### C. The District Court Did Not Err in Denying Ferrara's Motion for Judgment as a Matter of Law on Ekukpe's Failure to Intervene Claim.

Santiago argues he did not have a reasonable opportunity to intervene to prevent Ferrara from imposing an illegal chokehold on Ekukpe because the incident lasted less than fifty seconds. Although "[i]t is widely recognized that all law enforcement officials

10

have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," an officer may not be held liable unless he had a "realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "[W]hether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." *Figueroa*, 825 F.3d at 107. "Among these considerations, of course, the assault's duration will always be relevant and will frequently assume great importance." *Id.*

We agree with the district court that "a reasonable jury could have concluded that Santiago could have intervened," and that the "surveillance video supports the jury's finding." S. App'x 20. Although the altercation was brief, there is no "hard-and-fast temporal cutoff" for what constitutes adequate time to intervene. *Figueroa*, 825 F.3d at 107. Here, Santiago himself testified that he was in very close proximity to Ekukpe – even at one point "directly in front of" him, App'x 470 – and he identifies no "obstacles that might have hindered [his] ability to intercede," *Figueroa*, 825 F.3d at 108. Accordingly, the district court did not err in denying Santiago's motion for judgment on this claim.

**D. The District Court Did Not Err in Denying Ferrara's Motion for Judgment as a Matter of Law on Ekukpe's Malicious Prosecution Claim.**

Ferrara argues that he cannot be liable for malicious prosecution because "courts in this Circuit require that the *defendant himself*" (1) "be directly involved in post-arrest processing," (2) "file charges himself," or (3) "communicate directly with the District

11

Attorney." Ferrara Reply Br. 12. To succeed on a claim for malicious prosecution, a plaintiff must establish: (1) "that Defendants either commenced or continued a criminal proceeding against him," (2) "that the proceeding terminated in his favor," (3) "that there was no probable cause for the criminal proceeding," and (4) "that the criminal proceeding was instituted with actual malice." *Bermudez v. City of New York*, 790 F.3d 368, 376–77 (2d Cir. 2015). A jury "may permissibly find that a defendant initiated a prosecution where he filed the charges or prepared an alleged false confession and forwarded it to prosecutors." *Manganiello*, 612 F.3d at 163 (internal quotation marks and alterations omitted).

Here, Ferrara had direct involvement in the arrest, and, in his supervisory capacity, reviewed and signed off on the arrest report knowing that the Assistant District Attorney was likely to use the document to initiate criminal prosecutions. As with his fair trial claim, the evidence here supports a finding that Ferrara directly participated in the constitutional violation. *See Provost*, 262 F.3d at 154. The fact that Ferrara did not draft the report himself and had limited contact with the prosecutor is not enough to shield him from liability.

### E. Defendants Are Not Entitled to a New Trial.

Defendants insist that they are entitled to a new trial because Ekukpe's counsel mistakenly stated during summation that "disorderly conduct requires that [Ekukpe] be causing some form of public alarm" prior to his arrest. App'x 626. But while "[a] party is generally entitled to a new trial if the district court committed errors that were a 'clear

12

abuse of discretion' that were 'clearly prejudicial to the outcome of the trial,'" *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005) (quoting *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 17 (2d Cir. 1996)), "[r]arely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal," *Reilly v. Natwest Mkts. Grp.*, 181 F.3d 253, 271 (2d Cir. 1999) (internal quotation marks omitted).  Indeed, "where the jury's verdict finds substantial support in the evidence, counsel's improper statements will frequently be *de minimis* in the context of the entire trial."  *Marcic*, 397 F.3d at 124.

Although Ekukpe's counsel's statement of law was at a minimum incomplete and arguably incorrect, the district court did not abuse its discretion in denying Defendants' motions for a new trial.  Defendants do not dispute that the district court properly instructed the jury as to the elements of the offense, and likewise concede that the district court advised the jury that "[i]f an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow."  App'x 690.  Such instructions were clearly sufficient to cure any prejudice caused by counsel's misstatements in summation.  *See United States v. Gramins*, 939 F.3d 429, 457 (2d Cir. 2019) ("[W]e decline to recognize 'manifest injustice' on the basis of two stray comments from the government's rebuttal summation, both of which were squarely addressed by the district court's instructions to the jury and neither of which would independently require a new trial.").

## F. The District Court Did Not Err in Denying Defendants' Motion for Indemnification.

Finally, Defendants contend that the City's decision not to indemnify them was arbitrary and capricious. Under New York state law, the City must indemnify an employee for conduct in compliance with the rules and regulations of the employee's agency at the time the plaintiff was injured, so long as the injury to the plaintiff was not the result of the employee's intentional wrongdoing or recklessness. N.Y. Gen. Mun. Law § 50-k(3). "The question whether an act was done in violation of an agency rule, or was within the employee's scope of employment, is a factual determination made in the first instance by the Corporation Counsel, whose determinations may be set aside only if they are not supported by the evidence or are in some other sense 'arbitrary and capricious.'" *Mercurio v. City of New York*, 758 F.2d 862, 865 n.1 (2d Cir. 1985) (citing *Williams v. City of New York*, 64 N.Y.2d 800, 802 (1985)).

As a preliminary matter, the City's initial offer to include Defendants in the global settlement offer does not somehow render their later decision to exclude them – following Defendants' failure to take advantage of the City's offer – arbitrary. While Ferrara now contends that he was not given sufficient to time to accept the original settlement, he points to no rule requiring him to have unlimited time to negotiate; moreover, Ferrara himself acknowledges that he had enough time to consider the offer and then make a counteroffer, which the City rejected.

Regardless, the City's decision was neither arbitrary nor capricious. The City is not required to indemnify a defendant for "intentional wrongdoing or recklessness," N.Y.

14

Gen. Mun. Law § 50‑k(3), and the City's assessment of Defendants' wrongdoing or recklessness was supported by the findings of the Civilian Complaint Review Board ("CCRB"), the videotape of the incident, and the jury's findings of liability and award of punitive damages, *see Coker v. City of Schenectady*, 613 N.Y.S.2d 746, 747–48 (1994) (finding that a jury's award of punitive damages provided support for the City's decision not to indemnify Defendants under a similar statute). Defendants make much of the City's decision to indemnify other defendants in other cases. But, as indemnification determinations depend on the particular facts at hand, *see Lemma v. Nassau Cty. Police Officer Indemnification Bd.*, 31 N.Y.3d 523, 531 (2018), Defendants must do more than point to the City's decisions in other cases. This is especially true where, as here, the officers elected to take their cases to trial and the City was thus presented with a much more voluminous record on which to base its decision.

Defendants' argument that the district court improperly relied on the findings of the CCRB is similarly unavailing. The fact that Defendants may or may not have certain employment rights meriting a hearing prior to termination says nothing of their right to *indemnification* after trial. Moreover, Defendants had a full and fair opportunity to present their defense in court, yet failed to convincingly do so. At bottom, the City maintains discretion to indemnify officers. In light of the substantial factual support for the City's decision, the district court did not err in denying Defendants' request for an evidentiary hearing.

We have reviewed Santiago's and Ferrara's remaining arguments and find them to be without merit. For the foregoing reasons, the order of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court
