BEVERLY BLOOD, Appellant, v BOARD OF EDUCATION OF THE CITY OF NEW YORK et al., Respondents.

First Department, December 16, 1986

## APPEARANCES OF COUNSEL

*Brynne L. Haines* of counsel *(Weinraub & Haines,* attorneys), for appellant.

*Elizabeth Dvorkin* of counsel *(June A. Witterschein* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

## OPINION OF THE COURT

Murphy, P. J.

Petitioner Beverly Blood has been sued for damages in an action entitled *Turner v The Board of Education of the City of New York and Beverly Blood.* The action stems from events which took place on May 25, 1983 when petitioner, then a third grade teacher at P.S. 161, is said to have struck Dwonne Turner, a pupil in her class, in the eye with a bookbag, thereby allegedly causing him visual impairment. Petitioner has requested that respondent Corporation Counsel defend her in the *Turner* action. She claims to be entitled to such representation pursuant to General Municipal Law § 50-k (2) which provides in relevant part: "At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court * * * arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred".

The Corporation Counsel has refused to represent petitioner on the ground that she was not acting within the scope of her employment at the time of the Turner incident. In support of his position, the Corporation Counsel notes that petitioner received an unsatisfactory rating for the 1982-1983 school year, which rating was based entirely upon her conduct during the Turner incident.

Pursuant to General Municipal Law § 50-k (2), the initial determination as to whether an employee was acting within the scope of his or her employment, rests with the Corporation Counsel. The Corporation Counsel's determination may be challenged by means of a CPLR article 78 proceeding, but the challenge will succeed only if the determination, which is one of a factual sort *(Riviello v Waldron,* 47 NY2d 297, 303), is without factual basis and is thus arbitrary and capricious. *(Matter of Williams v City of New York,* 64 NY2d 800, 802.)

While the extent of our review is thus limited, we think it evident that an unsatisfactory rating does not necessarily indicate that an employee has acted beyond the scope of his or her employment and that the Corporation Counsel is not relieved of his obligation to provide legal representation pursuant to General Municipal Law § 50-k (2) simply because an unsatisfactory rating has been given. At issue is not whether the employee has performed unsatisfactorily, but whether the specific conduct, assuming it to have been unsatisfactory, was a natural and foreseeable incident of the employee's work and so within the scope of employment *(Riviello v Waldron, supra,* at pp 302-304).

We do not address whether the conduct here at issue is sufficient to support the unsatisfactory rating given petitioner. The propriety of the unsatisfactory rating was sustained after an administrative hearing initiated by petitioner. As review of that determination was not sought within the four-month statutory period, it is now foreclosed (CPLR 217). Accepting the propriety of the unsatisfactory rating, however, the question remains whether the actual conduct involved was within the scope of petitioner's employment.

The record discloses that on the morning of May 25, 1983, petitioner was actively engaged in teaching her third grade class. At about 9:00 A.M., a pupil named Jose entered the class late through a door at the back of the room. After escorting Jose to his place near the front of the class, petitioner returned to the rear to collect Jose's bookbag which had been left behind. Petitioner was reportedly angered by Jose's lateness and picked up the bookbag abruptly. As she did so, Dwonne Turner who was seated in the rear of the classroom facing forward turned his head in petitioner's direction and was hit by the metal reinforced corner of the still moving bag. Nowhere in the record is this sequence of events characterized as anything but an accident. Indeed, at the administrative hearing concerning the propriety of the unsatisfactory rating,

Dr. Orellanos, the P.S. 161 school principal, twice acknowledged that petitioner had not struck Dwonne Turner intentionally. Rather, the unsatisfactory rating was due to petitioner's inappropriate display of anger: "Dr. Orellanos: I know she [petitioner] didn't intend to hit Duane *[sic]*. I understand. But what I'm saying here is that this fit of rage by a teacher as Ms. Blood cannot be condoned, and especially when this is in the morning at 9 a.m., you know that temper." Shortly after Dr. Orellanos made this statement the following exchange occurred:

"Mr. Cassiano [the reviewing officer]: You are not really faulting Ms. Blood in any deliberate attempt to do this actually; it is something that happened in a fit of rage and without real intent to hurt the child. Do I read you correctly?

"Dr. Orellanos: That's correct, yes."

It is to be noted in addition that the letter of reprimand placed in petitioner's file by Dr. Orellanos consistently characterizes the incident as an accident. The reprimand does not even address petitioner's ill-tempered outburst, but confines itself to petitioner's failure to report the accident promptly. No formal charges were filed against petitioner as a result of the Turner incident and she has continued her professional duties uninterrupted since the events in question.

Viewed most sympathetically to respondents, the record indicates only that while angered by a pupil in her class, petitioner carelessly swung a bookbag which happened to hit Dwonne Turner. Surely, it is not so unusual an occurrence that a teacher loses her temper with her class. Indeed, displays of anger in the classroom cannot be regarded as other than natural and sometimes necessary incidents of a teacher's work. Nor can it be reasonably expected that a teacher's anger will always be well gauged to the occasion and unaccompanied by impulsive behavior. Such behavior, although undesirable, is a generally foreseeable eventuality of teaching and, as such, must be deemed within the scope of a teacher's employment *(Riviello v Waldron, supra,* at p 304; *see,* Mechem, Agency § 1884 [2d ed]). Only classroom conduct maliciously motivated or so extreme as to remove itself from any natural connection with a teacher's occupational duties would constitute an adequate factual basis for a determination by the Corporation Counsel pursuant to General Municipal Law § 50-k (2) that the scope of employment had been exceeded. To hold otherwise would permit the city to deny representation

to its employees based upon facts amounting to no more than ordinary negligence. Yet, the determination to be made by the Corporation Counsel pursuant to General Municipal Law § 50-k (2) is not whether an employee has been negligent, but whether the alleged negligence has occurred as a natural incident of employment. Indeed, the plain purpose of the statute is not to protect the city from its employee's negligence, or even in the main to afford the city a means of preserving its defenses. To the contrary, the statute is primarily directed at saving imperfect and, therefore, fallible public employees from the potentially ruinous legal consequences following from unintentional lapses in the daily discharge of their duties. It is in this light that the Corporation Counsel's defense obligation must be viewed. Thus, where, as here, the facts indicate only that an employee, while indisputably engaged in her work has acted carelessly and thereby caused an accident, the mere fact of the employee's negligence, having no bearing upon whether the act or omission occurred within the scope of employment, does not relieve the Corporation Counsel of his duty to defend.

The Corporation Counsel argues that his primary responsibility is to defend the city in the *Turner* action, and that he will not be able to allege in the city's defense to the injured plaintiff's claim of respondeat superior liability that petitioner exceeded the scope of her employment, while maintaining on petitioner's behalf that she was acting within the ambit of her professional duties. The conflict described, however, is in this case a mere hypothesis, having no real substance. As the Corporation Counsel has been unable to advance a factual basis for his determination that petitioner acted beyond the scope of her employment, it cannot be maintained that the city's defense will be in any manner compromised if the Corporation Counsel represents petitioner as well. All the city is deprived of is a defense for which there is no factual support.

The Corporation Counsel also argues that his dual representation of petitioner and the city will involve a conflict of interest because the defendants take contrary positions on whether misconduct has occurred *(see, Mercurio v City of New York,* 758 F2d 862, 864 [2d Cir 1985]). To the extent that a real conflict exists, the Corporation Counsel is relieved of his duty to defend a city employee by reason of that portion of General Municipal Law § 50-k (2) which states that legal

representation need not be provided if it is determined that the employee defendant was "in violation of any rule or regulation of his agency at the time the alleged act or omission occurred." *(See also,* General Municipal Law § 50-k [5].) But here, there is no support in the record for a determination that petitioner violated any agency rule or regulation and, indeed, no such determination has been made. Although petitioner's conduct is described generally as "unprofessional" and "unsatisfactory", there is no indication that, at the time of the alleged negligence she violated any specific agency rule or regulation. As noted previously, no disciplinary charges were filed against petitioner whose teaching career has continued uninterrupted since the Turner incident. Nor do we think that the reprimand and unsatisfactory rating given petitioner themselves constitute an adequate basis for the Corporation Counsel's withholding of representation. All negligence is unsatisfactory and worthy of reprimand, but the city's obligation to defend its employees from liability for alleged acts or omissions occurring during their work is not limited to those employees who are considered wholly free from fault.

We know of no case where mere dissatisfaction with an employee's employment-related conduct, unpursued in disciplinary proceedings, has been deemed sufficient to release the city from its defense obligation pursuant to General Municipal Law § 50-k (2). In *Mercurio v City of New York (supra),* relied on by respondent, the employee defendants were refused legal representation by the Corporation Counsel because departmental charges were pending against them. The issue in *Mercurio* was not, as here, the propriety of the Corporation Counsel's initial denial of counsel about which there was no question *(see,* General Municipal Law § 50-k [5]), but whether the defendants were later entitled to reimbursement for legal expenses incurred in the successful defense of criminal and civil actions. In passing, the court observed: "A further limit on his [the Corporation Counsel's] power to represent such individual defendants is the potential conflict of interest arising if both the City and the individuals are named as defendants in an action; if such a conflict exists, as where the City maintains misconduct has occurred and the employee claims no misconduct was involved, the Corporation Counsel, whose primary function is to represent the City, cannot represent the individuals * * * Such a conflict would exist, for example, if the City were to defend on the ground that it had properly trained and supervised its officers *and had disciplined them*

*for violating City rules". (Mercurio v City of New York, supra,* at p 864; emphasis added.)

Thus, not even this language from *Mercurio (supra),* relied upon by respondents, supports the proposition apparently advanced by them that a bare claim of misconduct, never made the subject of formal discipline, can suffice as a basis for denying an employee defendant representation by the Corporation Counsel. The defense, whose assertion by the city would cause the conflict of interest for the city, must be in some measure viable if it is to excuse the Corporation Counsel's defense obligation pursuant to General Municipal Law § 50-k (2). It cannot be seriously maintained that the city will be able to defend the *Turner* action by claiming that petitioner's acts amounted to misconduct for which no formal discipline was imposed.

As we find that the record discloses no factual support for the Corporation Counsel's determination that petitioner's actions respecting the *Turner* matter occurred outside the scope of her employment, and that the ethical conflicts claimed by respondents have little, if any, real dimension, we conclude that petitioner is entitled to prospective representation by the Corporation Counsel in the *Turner* suit. However, insofar as petitioner seeks reimbursement for legal costs she has incurred to date, her request must be denied. General Municipal Law § 50-k only authorizes representation by the Corporation Counsel, and there is no common-law right to reimbursement absent extraordinary circumstances. *(See, Corning v Village of Laurel Hollow,* 48 NY2d 348; *Mercurio v City of New York, supra,* at p 865.)

Accordingly, the judgment of the Supreme Court, New York County (George Bundy Smith, J.), entered March 20, 1986, which dismissed the petition of Beverly Blood seeking, *inter alia,* an order directing respondents Board of Education of the City of New York and the Corporation Counsel of the City of New York to provide legal representation in a civil action pursuant to General Municipal Law § 50-k (2), should be reversed, on the law, and the petition should be reinstated and granted to the extent of directing that the Corporation Counsel provide petitioner prospectively with legal representation in the action entitled *Turner v The Board of Education of the City of New York and Beverly Blood,* without costs.

SANDLER, SULLIVAN, ROSENBERGER and WALLACH, JJ., concur.

Judgment, Supreme Court, New York County, entered on March 20, 1986, unanimously reversed, on the law, and the petition reinstated and granted to the extent of directing that the Corporaton Counsel provide petitioner prospectively with legal representation in the action entitled *Turner v The Board of Education of the City of New York and Beverly Blood,* without costs and without disbursements.